# Richmond.

## OSBURN v. THROCKMORTON.

### NOVEMBER 16th, 1893.

MARRIED WOMEN—*Separate estate—Transfer—Case at bar.*—A debt secured by trust deed on land, became, under the creditor's will, the separate property of a married woman, with whose knowledge and consent it was settled with her husband in the purchase of land that was conveyed to her and yet remains hers. Subsequently the bond of matrimony between them was annulled, but the rights of property were left by the decree as they stood at its date. Afterwards she claimed the debt as her property and as unpaid, alleging her ignorance of her rights under act of April 4, 1877, at the time of the settlement. By her direction the trustee advertised the land for sale under the trust deed. The debtor obtained an injunction to the sale.

HELD:

1. Under that act a married woman may give her separate estate to her husband, and her ignorance of the law does not invalidate the transaction.
2. The rights of property between them became *res judicata* by the decree of divorce.
3. The injunction was rightly perpetuated, as the debt has been paid, and the grantor in the trust deed is entitled to have it released.

Appeal from decree of circuit court of Loudoun county, rendered October 22, 1891, in a chancery suit wherein James B. Throckmorton was complainant and Townsend M. Osburn, trustee, and Annie E. Throckmorton were defendants. The decree being adverse to the defendants, they appealed. Opinion states the case.

*John M. Orr*, for appellant.

*Ed. Nichols* and *Alexander & Tibbs*, for appellee.

Lacy, J., delivered the opinion of the court.

This is an appeal from two decrees of the circuit court of Loudoun county, rendered respectively at the January term, 1891, and the October term, 1891. The bill was filed in this case in December, 1890, to enjoin Osburn, trustee, from selling a tract of land in Loudoun county, conveyed to him as trustee by deed dated March 8, 1876, executed by James B. Throckmorton and Eliza J. Throckmorton, his wife, to secure the payment to Joseph Lodge of the debt therein mentioned of $2,000, due by note executed by the said James B. Throckmorton, dated March 8, 1876. The ground stated in the bill upon which the injunction is sought is as follows: The said Joseph Lodge died in the year 1877, after having made his will, by which said Osburn, trustee, was appointed the executor of the same. That during the first year of said executor's administration of said estate the said $2,000 was fully settled, and was charged in his executorial account as settled and collected, and the account confirmed more than ten years before, and the said bond evidencing said debt was surrendered to the debtor as paid. But the trust deed executed to secure the same by inadvertence was not released, though discharged in fact, and no trust remained to be executed by said trustee. That, nevertheless, the said Osburn, trustee, had advertised the said land for sale, as was shown by copy of advertisement exhibited with the bill, reciting in the said advertisement that the said debt secured by the said deed was now the property of the appellant, Annie E. Throckmorton, under the provisions of the said Lodge's will, of which he is the executor. The complainant averred that the will of Lodge contained no such provision, and that, being the executor of the Lodge will, Osburn, trustee, was disqualified from acting as trustee under the deed. The injunction was awarded by the judge of the

Loudoun county circuit court in accordance with the prayer
of the bill in December, 1890. At the January term, 1891,
of the said court, the defendant, Osburn, trustee, demurred to
the bill for want of equity, and for want of Mrs. Annie E.
Throckmorton as a party, she being a proper party, and
answered: That he admitted that the debt was due by James
B. Throckmorton and note given and secured by trust deed,
as stated in the bill, conveying the said tract of land to him
as trustee. That Lodge made his will, and appointed him
executor thereof, etc., and died, as charged in the bill; but
denied that the said debt had been paid, and the bond deliv-
ered as settled to the debtor, stating that he, as trustee, had
been required by Annie E. Throckmorton, the owner of the
debt secured under the said deed, to execute the same by the
sale of the said land. That it is true that the will of Lodge
did not mention the said debt, and provide that it should be
paid to Annie E. Throckmorton, but that it became her prop-
erty under the said will, her mother, Mary A. Humphrey,
being entitled to a portion of his estate under the will; and
that she had died and left three children—to wit, Abner Ed-
ward Humphrey, Virginia, wife of Volney Osburn, and said
Annie, then the wife of Mason Throckmorton, son of said
James B. Throckmorton, the complainant; and that said Annie
E. was entitled to one-third of the said legacy to her mother,
which, under the laws of Virginia, in July, 1877, was her sepa-
rate property. That under the distribution of the estate this
bond in question was allotted to the children of Mary C. Hum-
phrey, and was then allotted to Annie E., and received by her
husband, Mason Throckmorton, and taken into his possession,
and his (Osburn's) connection with the said bond as executor,
ceased when he assented to this legacy, and he had no further
concern with it, and was, therefore, not disqualified by reason
of his being executor from acting as trustee to execute the
said trust; and moved the dissolution of the injunction awarded
in the case. A decree in the said court, rendered on the 22d

day of October, 1890, in a cause in the said court between Mason Throckmorton and his wife, whereby a divorce *a vinculo matrimonii* was granted the husband against the said Annie, his wife, was exhibited with the said answer; and at the January term, 1891, a decree was rendered in the said cause, whereby the demurrer to the bill was overruled, and on his motion leave was given the plaintiff, James B. Throckmorton, to amend his bill, making Annie E. Throckmorton a party defendant thereto, which was filed accordingly; and it was set forth by way of amendment that the whole of the said $2,000 bond did not pass to said Annie as her share, but that $827 05 was in excess of her share, and was due to the said Abner Edward, and he paid this to him by a new bond for that amount, with security, which was accepted by said Abner, and surrendered on his part. The residue belonged to Annie. The bill then states how, in detail, the debt was paid to Mason, about which Annie was consulted with reference to the payment of the said debt to her husband by a conveyance to him of property and land, and that the said settlement made December 25, 1878, was with her knowledge, and had her approval and consent, and he (the complainant) had never heard from her a word of dissent or disapproval until about the time the land was advertised for sale. That up to 1885 the relations of Mason and Annie to each other as husband and wife were such as are usual between husband and wife. That in 1878 Mason bought a tract of land worth $1,600, and had the deed made to his said wife, without her knowledge until he informed her, which is still hers; and he gave her large sums, stated in the bill, exceeding, with the said land, the amount received in the said Lodge debt by her husband. In 1880 Mason and Annie were divorced, and Annie required to pay the costs. That there had been a complete settlement between him and Mason, with which Annie had remained satisfied until the disagreement between her and her husband. Annie answered, and made general denials of consent on her

part to the delivery to her husband of her property in question, and emphasizes her ignorance of her rights under the act of 4th of April, 1877, known as the "Married Woman's Act," and that the said act made this property her separate estate. But in the evidence it is shown that she knew all about it, and was a party to its delivery to her husband, and to the purchase of the Throckmorton place, subject to liens on it belonging to her husband's mother. And in her deposition she admits that she knew that it was handed to her husband, and on cross-examination that she gave her consent to its investment in the farm, and that she was present at the division of the Lodge estate and delivery of the J. B. Throckmorton note to her husband. In the suit of *Throckmorton* v. *Throckmorton*, referred to above, and decided in this court April 10, 1890, which was a suit between the said Mason and Annie, his wife, for divorce *a vinculo matrimonii*, and reported in 86 Va., 768, the said Annie asserted her claims against her husband for large sums of money belonging to her, amounting to $10,000, which he had received for her, and which sums included the debt in question here, as she says in her deposition in this case. In that suit her claim was decided against her, and her husband was divorced at her costs.

The first question we are to consider is the effect of this transfer of her rights by the married woman to her husband, and consenting to its investment in a particular manner, or to its use by him. Can the transaction be avoided upon the ground that she was ignorant of the law affecting the subject? If upon the mere ground of ignorance of the law men were admitted to overhaul or extinguish their most solemn contracts, and especially those which have been executed by a complete performance, there would be much embarrassing litigation in all judicial tribunals, and no small danger of injustice from the nature and difficulty of the proper proofs. *Lyon* v. *Richmond*, 2 John. Ch., 51, 60; *Shotwell* v. *Murray*, 1 Johns. Ch., 512; *Storrs* v. *Barker*, 6 Johns. Ch., 169, 170; Story, Eq. Jur.,

§ 111. The presumption is that every person is acquainted with his own rights, provided he has had a reasonable opportunity to know them; and nothing can be more liable to abuse than to permit a person to reclaim his property upon the mere pretense that at the time of parting with it he was ignorant of the law, acting on his title. *Proctor* v. *Thrall*, 22 Vt., 262. Ignorance of the law does not affect agreements in courts of equity, nor excuse from the legal consequences of particular acts. 1 Fombl. Eq., c. 2, § 7, note 2; 1 Madd. Ch. Pr., 60; *Hunt* v. *Rousmaniere*, 1 Pet., 1, 15, 16; 1 Story Eq. Jur., §§ 112, 113, 115, 116. A married woman possessed of separate property, as to which she has a general right of disposal, may bestow it upon her husband as well as upon a stranger, and courts of equity will sanction such disposition when made by the wife. Story, Eq. Jr., §§ 1395–1397. And, as was said by this court in *Beecher* v. *Wilson*, 84 Va., 813, the married woman's act of April 4, 1877, does not prevent a wife from giving her property to her husband if she pleases; nor does it abrogate the presumption that under circumstances such as obtained in this case she has done so. (Opinion by Fauntleroy, J.)

It is further insisted by the appellee that the decree of the circuit court perpetually enjoining the sale is right for another reason. In the divorce suit of *Throckmorton* v. *Throckmorton*, *supra*, the question as to property rights of the wife was raised, and by the decree in that cause they were disposed of by the decree of absolute divorce, without settling the property rights, and the rights of property were left where they were at the date of the decree. *Porter* v. *Porter*, 27 Gratt., 599. These rights certainly might have been disposed of in the divorce suit, and so the matter is *res adjudicata*. *Campbell* v. *Campbell*, 22 Gratt., 666; *Findlay* v. *Trigg*, 83 Va., 543. The debt in controversy has been fully paid and discharged, the appellee is entitled to hold the land free and released from the lien of the trust deed; and it was the duty of the creditor within ninety

days to have entered upon the margin of the book where such deed is recorded a release thereof, under our statute, and for failure to do so he is liable to a fine of twenty dollars. Code of Virginia, § 2498. There was no error in the decree of the circuit court complained of and appealed from here, and the same is affirmed.

FAUNTLEROY, J., dissented.

DECREE AFFIRMED.